UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUN OWNERS OF AMERICAN, Inc., et al.,<br>　　　　　　　Plaintiffs,<br><br>V.<br><br>CITY OF PHILADELPHIA,<br>　　　　　　　Defendant. | **Case Number<br>2:21-cv-02630** |

# ORDER

AND NOW, this _____ day of _____, 20___, upon consideration of Plaintiffs' Motion to Remand, it is **HEREBY ORDERED** that the Motion is **DENIED**.

　　　　　　　　　　　　　　　　　　　BY THE COURT:

　　　　　　　　　　　　　　　　　　　_____

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUN OWNERS OF AMERICA, Inc., et al., <br><br> Plaintiffs, <br><br> V. <br><br> CITY OF PHILADELPHIA, <br> Defendant. | Case Number <br> 2:21-cv-02630 |

**DEFENDANT'S RESPONSE IN OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

Defendant, the City of Philadelphia, files this response in opposition to Plaintiffs' Motion to Remand. The Court should deny the motion for the reasons more fully explained in the accompanying memorandum.

WHEREFORE, Defendant respectfully requests that this Court deny Plaintiffs' motion.

Respectfully submitted,

CITY OF PHILADELPHIA LAW DEPARTMENT
Diana P. Cortes, City Solicitor

Date: June 30, 2021

By: /s/ *Michael Pfautz*
BENJAMIN FIELD (PA ID No. 204569)
Divisional Deputy City Solicitor
DANIELLE E. WALSH (PA ID No. 312438)
Deputy City Solicitor
MICHAEL PFAUTZ (PA ID No. 325323)
Deputy City Solicitor
Affirmative and Special Litigation Unit
City of Philadelphia Law Department
1515 Arch Street, 15th Floor
Philadelphia, PA 19102
Phone: (215) 686-0464
*Counsel for Defendant*

UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| GUN OWNERS OF AMERICAN, Inc., et al.,<br>　　　　　　　　　Plaintiffs,<br><br>V.<br><br>CITY OF PHILADELPHIA,<br>　　　　　　　　　Defendant. | :<br>:<br>:<br>:<br>:  Case Number<br>:  2:21-cv-02630<br>:<br>:<br>:<br>: |

**DEFENDANT'S MEMORANDUM OF LAW IN OPPOSITION
TO PLAINTIFFS' MOTION TO REMAND**

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ................................................................................................. ii

I.　BACKGROUND ........................................................................................................ 1

II.　ARGUMENT .............................................................................................................. 2

　A.　Plaintiffs' Preemption Claim Turns on Federal Law ......................................... 2

　　1.　Federal Law is "Necessarily Raised" and "Actually Disputed" ................. 3

　　2.　What Is a Federal "Firearm" Is a "Substantial" Question Appropriate for Resolution in Federal Court ...................................................................... 6

　B.　There Is No Basis for Abstention or Declining Jurisdiction ........................... 9

　C.　No Award of Costs and Fees Is Appropriate Because the City's Removal Was Objectively Reasonable ............................................................................... 10

III.　CONCLUSION ......................................................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*Commonwealth of Pennsylvania v. Defense Distributed*, No. 18-cv-03208 (E.D.Pa.)................... 2
*Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 984 F. Supp. 338 (D. Del. 1996) ............................................................................................................................... 12
*Defense Distributed v. United States Department of State*, 838 F.3d 451 (5th Cir. 2016)............. 2
*Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677 (2006) ............................................ 8
*Federal Trade Commission v. AbbVie Inc*, 976 F.3d 327 (3d Cir. 2020)....................................... 8
*Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177 (4th Cir. 2014) ................................ 4
*Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1 (1983)................................................................................................................... 4
*Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308 (2005)............ 9
*Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953 (3d Cir. 1993) .................................. 13
*Gunn v. Minton*, 568 U.S. 251 (2013)............................................................................... 3, 8, 11
*In re Processed Egg Products Antitrust Litigation*, 836 F.Supp.2d 290 (E.D.Pa. 2011) ....... 14, 15
*Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158 (3d Cir. 2014).................. 4
*Martin v. Franklin Capital Corp.*, 546 U.S. 132 (2005).......................................................14, 15
*McDonald v. City of Chicago*, 561 U.S. 742 (2010)................................................................. 12
*Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804 (1986)................................................... 11
*MHA LLC v. HealthFirst, Inc.*, 629 Fed. App'x 409 (3d Cir. 2015) ........................................... 8
*Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173 (3d Cir. 1988) ....................... 12
*PharmaCann Penn, LLC v. BV Development Superstition RR, LLC*, 318 F.Supp.3d 708 (E.D.Pa. 2018) ................................................................................................................ passim
*State of Washington v. United States Department of State*, 996 F.3d 552 (9th Cir. 2021)............. 2
*Trump for President, Inc. v. Boockvar*, 481 F.Supp.3d 476 (W.D.Pa. 2020).............................. 13
*U.S. v. McCutcheon*, 446 F.2d 133 (7th Cir. 1971) ..................................................................... 6
*U.S. v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial Number LW001804*, 822 F.3d 136 (3d Cir. 2016) .............................................. 5

**Statutes**

Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, tit. I, 107 Stat. 1541 (1993) (codified at 18 U.S.C. § 922(s)(1)-(t)(1))...................................................................... 4
18 U.S.C. § 922(p)(1)(a) .............................................................................................................. 4
18 U.S.C. § 923(i) ........................................................................................................................ 4
26 U.S.C. § 5841.......................................................................................................................... 4
26 U.S.C. § 5822.......................................................................................................................... 4
28 U.S.C. §1367......................................................................................................................... 10
28 U.S.C. § 1447........................................................................................................................ 10
18 Pa.C.S. § 6120........................................................................................................................ 3

**Regulations**

Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27732
    (May 21, 2021) (to be codified at 27 C.F.R. pt. 447, 478, 479) ............................................. 5, 7

**Philadelphia Ordinances**

Phila. Code § 10-2002 ................................................................................................................... 2

**Treatises**

13D Fed. Prac. & Proc. (Wright & Miller) Juris. § 3567 Supplemental Jurisdiction—
    Background and Overview of 28 U.S.C.A. § 1367 (3d ed.) ..................................................... 13

**Other Authorities**

Annie Karni, *Ghost Guns: What They Are, and Why They Are an Issue Now*, NY Times
    (Apr. 9, 2021) .......................................................................................................................... 1, 7
Brandi Hitt, *'Ghost Guns' Investigation: Law Enforcement Seeing <u>Unserialized</u> Firearms
    on Daily Basis in SoCal*, Eyewitness News, abc7 (L.A., Cal.) (Jan. 30, 2020) ......................... 7
Bronagh Tumulty, *'Ghost guns' seized by Chicago police steadily rising as Biden
    administration plans to target them*, WGN9 (Chicago, Ill.) (updated Apr. 8, 2021,
    10:22 p.m.) ................................................................................................................................. 7
Bureau of Alcohol, Tobacco, Firearms and Explosives, *Does an individual need a license
    to make a firearm for personal use?* (Mar. 17, 2020) ............................................................... 5
Bureau of Alcohol, Tobacco, Firearms and Explosives, *Questions and Answers* .......................... 5
Bureau of Alcohol, Tobacco, Firearms and Explosives, *What is an "80%" or
    "unfinished" receiver?* (Feb. 6, 2020) ...................................................................................... 5
Dave Schratwieser, *'Ghost guns' becoming increasing problem in Philadelphia*, Fox29
    Philadelphia (Apr. 8, 2021) ........................................................................................................ 7
Josiah Bates, *The Saugus High School Shooter Used an Illegal 'Ghost Gun'. Authorities
    Warn More Criminals Are Using Untraceable Weapons to Get Around Gun Laws*,
    Time Mag. (Nov. 23, 2019, 3:21 p.m.) ....................................................................................... 7
Mensah M. Dean, *Untraceable ghost guns proliferate as Philadelphia grapples with
    violence*, Morning Call (Mar. 18, 2020 7:00 AM) .................................................................... 1
Peter Hermann & Tom Jackman, *District seeks to Ban 'Ghost Gun' Kits as Seizure of
    Homemade Weapons Soar*, Wash. Post (Feb. 27, 2020, 3:38 p.m.) ......................................... 7
Phil Davis, *Baltimore Police say use of 'ghost guns' is increasing, with more connected
    to homicides and shootings*, Baltimore Sun (Jun. 23, 2021, 10:46 a.m.) .................................. 7
Ximena Conde, *Four Philly men arrested for making and selling untraceable 'ghost
    guns'*, WHYY (Mar. 7, 2021) .................................................................................................... 1

Defendant, the City of Philadelphia (the "City"), by and through its undersigned counsel, hereby submits this Memorandum of Law in opposition to Plaintiffs' Motion to Remand.

## I. BACKGROUND

For several years now, 3D-printed and ghost guns have been a growing concern in Philadelphia and across the nation. Unlike traditional firearms, ghost guns are manufactured in parts without identification that are shipped to unlicensed buyers for final assembly.[1] These parts, so-called "80% receivers," are often plastic, do not have serial numbers, and buyers don't undergo background checks before purchase.[2] Nearly 100 ghost guns were recovered in Philadelphia last year as part of criminal investigations, and several residents were recently arrested for making and selling them.[3]

Although the process differs, 3D-printed guns, manufactured using a three-dimensional printers, present similar concerns. These weapons are also unregistered and made of plastic that can bypass security. *See, e.g., Defense Distributed v. United States Department of State*, 838 F.3d 451, 455 (5th Cir. 2016). In recent years, there has been extensive litigation over the publication of designs for 3D printers to use to create such weapons. *See, e.g.*, *id.*; *State of Washington v. United States Department of State*, 996 F.3d 552, 559 (9th Cir. 2021); *Commonwealth of Pennsylvania v. Defense Distributed*, No. 18-cv-03208 (E.D.Pa.).

---

[1] *See, e.g.,* Annie Karni, *Ghost Guns: What They Are, and Why They Are an Issue Now*, NY Times (Apr. 9, 2021), https://www.nytimes.com/2021/04/09/us/politics/ghost-guns-explainer.html.

[2] Mensah M. Dean, *Untraceable ghost guns proliferate as Philadelphia grapples with violence*, Morning Call (Mar. 18, 2020 7:00 AM), https://www.mcall.com/news/pennsylvania/mc-nws-pa-philadelphia-ghost-guns-20200318-jzyt4thyvvgntproexbleyleay-story.html.

[3] Ximena Conde, *Four Philly men arrested for making and selling untraceable 'ghost* guns*'*, WHYY (Mar. 7, 2021), https://whyy.org/articles/four-philly-men-arrested-for-making-and-selling-untraceable-ghost-guns/ (updated Mar. 16, 2021 10:56 PM).

1

Chapter 10-2000 of the Philadelphia Code regulates the manufacture of certain types of firearms including 3D-printed and ghost guns. Among other things, it prohibits the manufacture of these types of weapons by any person not authorized to do so under federal law. *See* Phila. Code § 10-2002(1). The Code also prohibits the sale and purchase of unfinished versions of these weapons and the tools purposed for their manufacture by persons not licensed under federal law. *See id.* § 10-2002(2)-(3).

Plaintiffs sued in state court, alleging that the City's regulations were preempted by state law, passed in violation of the constitutional right to bear arms, and void for vagueness. Compl. (ECF 1-1). The City removed to this Court on the basis that Plaintiffs' Complaint raised federal issues conferring federal question jurisdiction, namely whether the regulated activities were legal under federal law and the Second Amendment. Notice of Removal (ECF 1). Plaintiffs filed the Motion to Remand pending before the Court. (ECF 2). The City then Answered (ECF 3). As explained below, the City's removal was appropriate and Plaintiffs' Motion to Remand should be denied.

II. **ARGUMENT**

    A. **Plaintiffs' Preemption Claim Turns on Federal Law**

Plaintiffs' preemption claim meets the Supreme Court's four-part test for federal jurisdiction over state law claims. "'[F]ederal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress." *PharmaCann Penn, LLC v. BV Development Superstition RR, LLC*, 318 F.Supp.3d 708, 712 (E.D.Pa. 2018) (quoting *Gunn v. Minton*, 568 U.S. 251, 258 (2013)). Because Plaintiffs' resolution of preemption claim properly requires determination of what is lawful under federal firearms law in federal court, this Court has jurisdiction.

2

### 1. Federal Law is "Necessarily Raised" and "Actually Disputed"

First, Plaintiffs' preemption claim confers subject matter jurisdiction because it necessarily involves the federal issue of whether the activities regulated by the Ordinance are legal under federal law, which is a prerequisite for preemption under the state law here. "For a federal issue to be necessarily raised, 'vindication of a right under state law [must] necessarily turn[] on some construction of federal law.'" *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.,* 463 U.S. 1, 9 (1983)). As Plaintiffs acknowledge, this question turns on whether they can "'prevail . . . without resorting to' federal law." Mot. at 6 n.2 (citing *Flying Pigs, LLC v. RRAJ Franchising, LLC*, 757 F.3d 177, 182 (4th Cir. 2014)).

Pennsylvania state law's preemption of municipal firearms regulation is limited to ordinances that regulate "lawful" ownership, possession, and transfer of "firearms." 18 Pa.C.S. § 6120. Thus, in order to prevail on their preemption claim, Plaintiffs will necessarily have to show that the activities regulated by the ordinance are "lawful" under federal law. *See* Mot. at 5 ("As Plaintiffs explained in their Complaint, the challenged Philadelphia Ordinance 'attempts to regulate otherwise lawful conduct' . . . ."); Compl. ¶ 3 ("No Pennsylvania or federal law prevents a law-abiding citizen from the private manufacture of a firearm for his own use, whether through 3-D printing or by completing an unfinished frame or receiver. Likewise, no Pennsylvania or federal law prohibits a person from transferring or using a 'firearm finishing device' or 'firearm finishing jig" in manufacturing a private firearm.'").

Among the many federal provisions governing projectile weapons are prohibitions on the manufacture of 3D-printed or unregistered guns and the transfer of unserialized firearms. For instance, under 18 U.S.C. § 922(p)(1)(a), it is illegal to "manufacture," "sell," "transfer," or "possess" "firearm[s]" that cannot be detected by walk-through metal detectors. Section 923(i)

3

requires "the receiver or frame" of "firearm[s]" sold to have a serial number. Federal law also prohibits licensed firearms dealers from selling, transferring, or delivering a firearm to any individual prior to conducting a background check. *See* Brady Handgun Violence Prevention Act, Pub. L. No. 103-159, tit. I, 107 Stat. 1541 (1993) (codified at 18 U.S.C. § 922(s)(1)-(t)(1)). Another provision prohibits the manufacture of "firearm[s]" without advance registration with and approval from the Attorney General. *See* 26 U.S.C. §§ 5822, 5841; *U.S. v. One (1) Palmetto State Armory PA-15 Machinegun Receiver/Frame, Unknown Caliber Serial Number LW001804*, 822 F.3d 136, 138 (3d Cir. 2016) ("[P]rior to manufacturing a firearm, any prospective maker must apply for permission from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF)." (citing 26 U.S.C. §§ 5822, 5841)).[4] In order to determine whether the ordinance is preempted, the Court will need to determine whether these prohibitions apply to the activities covered by the ordinance by determining whether objects of the Ordinance are "firearm[s]" within the meaning of these federal statutes.

Moreover, it is clear from Plaintiffs' arguments and the documents they cite that the application of these provisions is "actually disputed." Contrary to the interpretation above, Plaintiffs claim the federal question is settled in their favor based solely on an online FAQ from the Bureau of Alcohol, Tobacco, Firearms and Explosives (ATF). *See* Mot. at ¶ 28. But one cited ATF post, in language omitted by Plaintiffs, notes that federal law prohibits "firearms that cannot be detected by metal detectors" and requires "advance approval" for manufacturing as described above.[5] Another ATF post cited by Plaintiffs also refutes Plaintiffs' interpretation,

---

[4] *See generally U.S. v. McCutcheon*, 446 F.2d 133, 134 (7th Cir. 1971) (affirming conviction under Sections 5822 and 5841 for failure to register sawed-off shotgun).

[5] Bureau of Alcohol, Tobacco, Firearms and Explosives, *Does an individual need a license to make a firearm for personal use?* (Mar. 17, 2020), https://www.atf.gov/firearms/qa/does-

4

saying that while "some may believe [an 80% receiver] has not yet reached a stage of manufacture that meets the definition of 'firearm frame' or 'receiver' according to [federal law][,] [t]hese are not statutory terms and ATF does not use or endorse them."[6] Moreover, even if these FAQs were read as Plaintiffs argue, ATF states that the "Q&As do not have the force and effect of federal statutes or Department of Justice regulations, and are not final agency actions. They may also be rescinded or modified at ATF's discretion."[7]

Plaintiffs compare federal regulation of guns to that of marijuana to suggest that the Court would not have jurisdiction to consider a case involving whether marijuana was legal in Philadelphia. Mot. at 7 n.3. But a recent case from this District found precisely the opposite. There, a property owner sued a lessee who wanted to open a marijuana dispensary despite presence of deed language prohibiting "unlawful" uses. *PharmaCann Penn, LLC v. BV Development Superstition RR, LLC*, 318 F.Supp.3d 708, 711 (E.D.Pa. 2018). The Court found the requirement that the Court determine whether the use as a dispensary was "'unlawful'" "requires a court to apply federal law to [the plaintiff's] chosen use." *Id.* at 713. And unlike in

---

individual-need-license-make-firearm-personal-use. This same ATF post cites a number of provisions, none of which authorize the conduct regulated by the ordinance. Several deal with possession of machineguns (18 U.S.C. § 922(o) and 27 C.F.R. § 479.105) or imported semiautomatic rifles and shotguns (27 C.F.R. § 478.39). And Plaintiffs have not plead compliance with the others, which address the security (18 U.S.C. § 922(p)) and registration (26 U.S.C. 5822 and 27 C.F.R. § 479.62) requirements described above.

[6] Bureau of Alcohol, Tobacco, Firearms and Explosives, *What is an "80%" or "unfinished" receiver?* (Feb. 6, 2020), https://www.atf.gov/firearms/qa/what-%E2%80%9C80%E2%80%9D-or-%E2%80%9Cunfinished-receiver.

[7] Bureau of Alcohol, Tobacco, Firearms and Explosives, *Questions and Answers*, https://www.atf.gov/questions-and-answers (last visited June 29, 2021). ATF has recently issued a Notice of Proposed Rulemaking that, if finalized, would adopt the City's interpretation. Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27732 (May 21, 2021) (to be codified at 27 C.F.R. pt. 447,478, 479), *available at* https://www.federalregister.gov/documents/2021/05/21/2021-10058/definition-of-frame-or-receiver-and-identification-of-firearms (last visited June 30, 2021).

5

Plaintiffs' beach ball example, Pennsylvania's preemption statute creates the federal question here by limiting its scope to "lawful" activity. Plaintiffs are free to argue that federal law does not prohibit the regulated activities, but the fact that they must do so in order to prevail on their preemption claim confers subject matter jurisdiction. As a result, it is necessarily raised, and as Plaintiffs' protests show, it is actually disputed.

### 2. What Is a Federal "Firearm" Is a "Substantial" Question Appropriate for Resolution in Federal Court

Determining if the regulated activities at issue here are prohibited by federal law is also a "substantial" federal question whose resolution in federal court comports with Congress's balancing of federal and state responsibilities. "[W]hether a question is 'substantial' turns not on the 'importance of the issue to the plaintiff's case and to the parties, but instead on 'the importance of the issue to the federal system as a whole.'" *Federal Trade Commission v. AbbVie Inc*, 976 F.3d 327, 347 (3d Cir. 2020) (quoting *Gunn v. Minton*, 568 U.S. 251, 260 (2013)). In making this determination, "the Supreme Court has distinguished cases such as *Grable* that present a 'nearly pure issue of law' that would govern numerous other cases, from those that are 'fact-bound and situation-specific.'" *MHA LLC v. HealthFirst, Inc.*, 629 Fed. App'x 409, 413 (3d Cir. 2015) (quoting *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 700–01 (2006)). Courts look for "a serious federal interest in claiming the advantages thought to be inherent in a federal forum." *Grable & Sons Metal Products, Inc. v. Darue Engineering & Mfg.*, 545 U.S. 308, 313 (2005).

Again, *PharmaCann* is an illuminating example. The Court determined that the substantiality requirement was satisfied because the determination of the legality of the activities at issue loomed large because of various states' regulation of the activity. 318 F. Supp. 3d at 713. The Court also found that federal courts familiarity with the federal drug law at issue, and

6

its potential impact on criminal prosecutions, counseled in favor of a "federal forum, free from the pressures of judicial election politics." *Id.*

The same is true here. 3D-printed guns and 80% receivers are a nationwide issue.[8] The particular federal question raised here, the definition of a "firearm," is one that is the subject of proposed rulemaking by the ATF. *See* Definition of "Frame or Receiver" and Identification of Firearms, 86 Fed. Reg. 27732 (May 21, 2021) (to be codified at 27 C.F.R. pt. 447, 478, 479).[9] As with federal drug law, federal courts have great familiarity with federal firearms statutes through criminal cases while being free of the pressures of politics that often accompany gun control issues.

---

[8] *See, e.g.,* Annie Karni, *Ghost Guns: What They Are, and Why They Are an Issue Now*, NY Times (Apr. 9, 2021), https://www.nytimes.com/2021/04/09/us/politics/ghost-guns-explainer.html; Josiah Bates, *The Saugus High School Shooter Used an Illegal 'Ghost Gun'. Authorities Warn More Criminals Are Using Untraceable Weapons to Get Around Gun Laws*, Time Mag. (Nov. 23, 2019, 3:21 p.m.), https://time.com/5737227/saugus-shooter-ghost-gun/; Brandi Hitt, *'Ghost Guns' Investigation: Law Enforcement Seeing Unserialized Firearms on Daily Basis in SoCal*, Eyewitness News, abc7 (L.A., Cal.) (Jan. 30, 2020), https://abc7.com/5893043/; Phil Davis, *Baltimore Police say use of 'ghost guns' is increasing, with more connected to homicides and shootings*, Baltimore Sun (Jun. 23, 2021, 10:46 a.m.), https://www.baltimoresun.com/news/crime/bs-md-ci-cr-baltimore-police-ghost-guns-20210623-v63w6llvnzcrdfq5gphg2prui4-story.html; Dave Schratwieser, *'Ghost guns' becoming increasing problem in Philadelphia*, Fox29 Philadelphia (Apr. 8, 2021), https://www.fox29.com/news/ghost-guns-popping-up-all-over-philadelphia; Peter Hermann & Tom Jackman, *District seeks to Ban 'Ghost Gun' Kits as Seizure of Homemade Weapons Soar*, Wash. Post (Feb. 27, 2020, 3:38 p.m.), https://www.washingtonpost.com/local/public-safety/district-seeks-to-ban-ghost-gun-kits-as-seizures-of-homemade-weapons-soar/2020/02/27/d12be0da-5416-11ea-9e47-59804be1dcfb_story.html; Bronagh Tumulty, *'Ghost guns' seized by Chicago police steadily rising as Biden administration plans to target them*, WGN9 (Chicago, Ill.) (updated Apr. 8, 2021, 10:22 p.m.), https://wgntv.com/news/chicagocrime/ghost-guns-seized-by-chicago-police-steadily-rising-as-biden-administration-plans-to-target-them/.

[9] *Available at* https://www.federalregister.gov/documents/2021/05/21/2021-10058/definition-of-frame-or-receiver-and-identification-of-firearms (last visited June 30, 2021).

These considerations also show that federal jurisdiction over this case will not upset the federal-state balance. Unlike in *Gunn*, 568 U.S. at 264, where the state had a particular interest in regulating the legal profession, the federal issue here is not one where the states have a greater regulatory interest. Unlike *Merrell Dow Pharms. Inc. v. Thompson*, 478 U.S. 804, 811-12 (1986), where the Court was concerned with opening the federal courts to a flood of state tort claims, reviewing municipal legislation for the subset of preemption claims that turn on federal firearms law will not open federal courts to endless litigation. To the contrary, the breadth of longstanding federal firearms regulation suggests Congress viewed federal courts as an appropriate forum to adjudicate these kinds of issues. *Cf. PharmaCann*, 318 F. Supp. 3d at 714 (noting 40 years of federal drug law).

In sum, the question of whether or not the regulated activities at issue here are prohibited by federal law is a substantial federal question justifying jurisdiction because of the role the determination plays in the federal firearms regulation system and its importance to firearms regulation throughout this county. Federal courts are well suited to adjudicate this issue.[10]

---

[10] Count II of Plaintiffs' Complaint also raises a federal question conferring subject matter jurisdiction, though Plaintiffs now appear to have abandoned this particular issue. In Count II, Plaintiffs' argument was that the Ordinance violated Plaintiffs' right to bear arms under Pennsylvania's Constitution because Pennsylvania's provision must be "no less expansive than under the Second Amendment to the United States Constitution." Compl. ¶ 48 & n.9. In support, Plaintiffs cited a Second Amendment case from the United States Supreme Court, *McDonald v. City of Chicago*, 561 U.S. 742 (2010). Thus, Plaintiffs appeared to argue that under *McDonald*, state constitutions cannot be less protective of guns rights than the Federal Constitution.

Plaintiffs carefully worded disclaimer was not to the contrary. As they note, they have not literally brought suit under the Second Amendment. Mot. at 15 n.9. But that is not inconsistent with their argument that a claim under Pennsylvania's Constitution must necessarily be interpreted in Plaintiffs' favor in light of the Second Amendment.

Plaintiffs can, of course, amend their complaint to remove this cause of action to undermine federal jurisdiction as to this claim, as they themselves suggest, *cf.* Mot. at 7, but they cannot

### B. There Is No Basis for Abstention or Declining Jurisdiction

Plaintiffs' arguments that this Court should nonetheless abstain under *Younger* and *Pullman,* or decline supplemental jurisdiction, have no merit. *Younger* abstention requires an ongoing state judicial proceeding, *see PharmaCann Penn, LLC v. BV Development Superstition RR, LLC*, 318 F.Supp.3d 708, 717 (E.D.Pa. 2018), but the only state judicial proceeding that Plaintiffs cite is this case prior to removal, Mot. at 11. Because the entire premise of *Younger* abstention is that the federal court should abstain to avoid interfering with the state proceeding, *see id.*, it has no application here as Plaintiffs have cited no state proceeding that this Court would interfere with if it retains jurisdiction.

*Pullman* abstention is equally inapposite here. It requires "unsettled questions of state law" which "must be resolved *before* a substantial federal *constitutional* question can be decided." *Trump for President, Inc. v. Boockvar*, 481 F.Supp.3d 476, 488–89 (W.D.Pa. 2020) (emphasis added) (quoting *Grode v. Mut. Fire, Marine & Inland Ins. Co.*, 8 F.3d 953, 956 (3d Cir. 1993)). But here the order is reversed: resolution of Plaintiffs' state law preemption claim turns on the interpretation of federal law. Moreover, Plaintiffs' preemption claim raises a federal statutory, not constitutional, question. Because the state law question requires resolution of the federal question, *Pullman* abstention is not warranted either.

Finally, there is no basis for declining jurisdiction entirely under Section 1367. Section 1367 deals only with the Court's discretion to exercise supplemental jurisdiction over non-federal claims, not an independent basis to refuse jurisdiction over a federal claim. *See* 28

---

amend their pleadings by motion. *See, e.g.*, *Pennsylvania ex rel. Zimmerman v. PepsiCo, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) (providing that "it is one thing to set forth theories in a brief, it is quite another to make proper allegations in a complaint"); *Compaq Computer Corp. v. Packard Bell Electronics, Inc.*, 984 F. Supp. 338, 344 (D. Del. 1996) (a party cannot amend its complaint through its briefs).

9

U.S.C. §1367(a) (providing "the district courts shall have supplemental jurisdiction over all *other* claims" (emphasis added)); *see also* 13D Fed. Prac. & Proc. (Wright & Miller) Juris. § 3567 Supplemental Jurisdiction—Background and Overview of 28 U.S.C.A. § 1367 (3d ed.) ("[S]upplemental jurisdiction permits the court to decide *other claims* that individually do not satisfy an independent basis of subject matter jurisdiction."). As discussed above, this Court has original jurisdiction over Count I, so supplemental jurisdiction is inapplicable thereto.[11]

### C. No Award of Costs and Fees Is Appropriate Because the City's Removal Was Objectively Reasonable

In the event this Court disagrees and remands this case, Plaintiffs should not be awarded fees and costs. "'[A]bsent unusual circumstances, courts may award attorney's fees under § 1447(c) only where the removing party lacked an objectively reasonable basis for seeking removal.'" *Inselberg v. New York Football Giants, Inc.*, 661 Fed. App'x. 776, 779 (3d Cir. 2016) (quoting *Martin v. Franklin Capital Corp.*, 546 U.S. 132, 141 (2005)). This standard protects defendants' "'right to remove as a general matter, when the statutory criteria are satisfied,'" and avoids "'discouraging [the] exercise [of removal] in all but obvious cases." *In re Processed Egg Products Antitrust Litigation*, 836 F.Supp.2d 290, 303 (E.D.Pa. 2011) (quoting *Martin*, 546 U.S. at 140).

Plaintiffs dispute Defendant had a colorable basis to remove this case, but the existence of legal authority like *PharmaCann* provides an "objectively comprehensible and nonfrivolous basis for removal." *Id.* Nor have Plaintiffs themselves cited any controlling authority contrary

---

[11] While this Court could theoretically sever and remand Counts II (as Plaintiffs now construe it) and III, Plaintiffs have not sought this relief or explained how these Counts satisfy Section 1367(c) other than by virtue of the fact that they are state law claims. To the contrary, considerations of judicial economy and the related nature of the factual questions involved in all three counts counsel exercising supplemental jurisdiction over these claims.

to the City's arguments here. *Cf. id.* ("[T]his result suggests by implication that there was no obvious authority contravening removal."). That Plaintiffs now regret peppering their Complaint with references to federal law and the Second Amendment does not make the City's removal objectively unreasonable.

### III. CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court deny Plaintiffs' Motion.

                                          Respectfully submitted,

                                          CITY OF PHILADELPHIA LAW DEPARTMENT
                                          Diana P. Cortes, City Solicitor

Date: June 30, 2021                    By: */s/ Michael Pfautz*
                                          BENJAMIN FIELD (PA ID No. 204569)
                                          Divisional Deputy City Solicitor
                                          DANIELLE E. WALSH (PA ID No. 312438)
                                          Deputy City Solicitor
                                          MICHAEL PFAUTZ (PA ID No. 325323)
                                          Deputy City Solicitor
                                          Affirmative and Special Litigation Unit
                                          City of Philadelphia Law Department
                                          1515 Arch Street, 15th Floor
                                          Philadelphia, PA 19102
                                          Phone:   (215) 686-0464
                                          *Counsel for Defendant*

## **CERTIFICATE OF SERVICE**

      I hereby certify that, on the date set forth below, I served a true and correct copy of the foregoing Defendant's Opposition to Plaintiffs' Motion to Remand upon all counsel of record via ECF system and the foregoing document is available for viewing and/or downloading pursuant to the Court's ECF system and is served pursuant to FRCP Rule 5(b) and Local Civil Rule 5.1.2.

                          BY:    /s/ *Michael Pfautz*
                                       Deputy City Solicitor

Dated: June 30, 2021