**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

|  |  |  |
|---|---|---|
| GUN OWNERS OF AMERICA, INC., *et al.*, | ) ) ) | |
| Plaintiffs, | ) ) ) | |
| v. | ) ) | No. 2:21-cv-2630-TJS |
| | ) | Case in other Court: |
| CITY OF PHILADELPHIA, | ) ) | Court of Common Pleas of Philadelphia County, Civil |
| Defendant. | ) ) | No. 00884 |

**PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO**
**PLAINTIFFS' MOTION TO REMAND**

Plaintiffs, by and through counsel, file this, their reply to Defendant's Opposition to Plaintiffs' Motion to Remand, pursuant to this Court's Policies and Procedures on Motions, IV.

## ARGUMENT

**A. Plaintiffs Raised No Federal Claims or Questions.**

The City's main argument as to why this case raises a federal question boils down to a single proposition – that "Plaintiffs' resolution of [sic] preemption claim properly requires determination of what is lawful under federal firearms law in federal court…." Defendant's Response in Opposition to Plaintiffs' Motion to Remand ("Opp.") at 2. According to the City, this "necessarily involves the federal issue of whether the activities regulated by the Ordinance are legal under federal law." *Id*. at 3. But Plaintiffs raised no federal claims. According to the City, then, *every single* challenge under the Pennsylvania firearm preemption statute (18 Pa.C.S. § 6120) would *always* be removable to federal court, on the theory that the Pennsylvania statute preempts only regulation of "lawful" activities, and thus a party always "*will necessarily have to show that the activities regulated by the ordinance are 'lawful' under federal law*." Opp. at 3 (emphasis added). In fact, later in its brief the City claims exactly that, arguing that "Plaintiffs … must … argue that federal law does not prohibit the regulated activities … in order to prevail…." *Id.* at 6. And if there were any doubt as to the sweeping nature of the City's claim, it again states that, under its theory, federal courts would be responsible for "reviewing municipal legislation for the subset of preemption claims," and asserts that "Congress viewed federal courts as an appropriate forum to adjudicate these kinds of issues." *Id.* at 8.

First, this claim is shocking on its face, because it would mean that only federal courts can decide Pennsylvania firearm preemption cases. Moreover, such a principle would apply not only in Pennsylvania, but also in all other states with similar statutes, entirely divesting state courts

1

from deciding cases dealing with their own state firearm preemption issues.  That would be a ridiculous result, and would turn removal to federal court on its head, making countless state cases into federal cases by default, unless and until a plaintiff definitively proved that federal law was not implicated in any way.  This Court should decline the invitation to set such a precedent, in violation of the fourth prong of removability, that "'resolution in federal court'" not "'disrupt[] the federal-state balance….'"[1]  Opp. at 2.

Second, Section 6120 does not say what the City claims it does. Indeed, the City selectively quotes from Section 6120, which does not require that "ownership, possession, transfer or transportation of firearms" must be "lawful" under *both* state *and federal law*, but merely "***lawful*** … for purposes not ***prohibited by the laws of this Commonwealth***." Emphasis added.  The City misleadingly omits this statutory language from its brief.

Third, Pennsylvania courts have interpreted this omitted language to expressly foreclose the City's claim that a preemption challenge *requires* an examination of federal law.  In *Minich v. County of Jefferson*, 869 A.2d 1141 (2005), the Commonwealth Court emphasized the statutory language "***prohibited by the laws of this Commonwealth***" and concluded that a city may regulate with respect "only to the ***unlawful*** possession of firearms, i.e., possession 'prohibited by the laws of this Commonwealth.'" *Id*. at 1143 (emphasis original).  The court then looked to Pennsylvania law – *but not to federal law* – to see what activities were prohibited. *Id*.  Pennsylvania state courts thus interpret state law to expressly foreclose the precise claim made by the City here.  Moreover, "state court precedent is binding upon [federal courts] regarding issues of state law…." *Amanda*

---

[1] Tellingly, the City ignores Plaintiffs' citation to *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) ("A federal court's grant of relief against state officials on the basis of state law, whether prospective or retroactive, does not vindicate the supreme authority of federal law.  On the contrary, it is difficult to think of a greater intrusion on state sovereignty than when a federal court instructs state officials on how to conform their conduct to state law."). Plaintiffs precisely seek the relief that *Pennhurst* prevents:  for the City to conform its conduct to state law.

*A. v. Coatesville Area Sch. Dist.*, 2005 U.S. Dist. LEXIS 2637, *15 (E.D. Pa. 2005) (quoting *RAR Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1276 (7th Cir. 1992)).  This Court should follow the Commonwealth Court's decision that Section 6120 involves no examination of federal law.  Even if that decision was not binding on this Court, the principle is clearly correct.

Fourth, despite being the defendant in numerous similar cases, the City has never previously taken the position that federal courts must decide all state firearm preemption cases.  In fact, in past cases the City not only has consented to but also has *expressly invoked* the jurisdiction of Pennsylvania state courts to decide preemption cases.  For example, in June of 1993, Philadelphia passed an ordinance banning so-called "assault weapons."  Then, in October of 1994, the Pennsylvania General Assembly passed a bill amending Section 6120.  Philadelphia then brought suit (in state court), challenging the validity of Section 6120 and seeking a decision validating the City's ban on assault weapons.  The Supreme Court of Pennsylvania rejected every one of the City's arguments as "plainly without merit" and "frivolous," striking down the City's ban on "assault weapons."  *Ortiz v. Commonwealth*, 545 Pa. 279, 285 (1996).[2]  Notably, the Court conducted absolutely no analysis of federal law even though, beginning on September 13, 1994, *federal law banned the manufacture of assault weapons* for a ten-year period, independently of the City's ordinance banning them entirely.  Surely, if there were an appropriate case for the City to raise or a court to examine federal law, *Ortiz* would have been it.[3]

---

[2] Prior to *Ortiz*, the City suffered a loss in the Commonwealth Court on a previous ordinance regulating the acquisition and transfer of firearms.  *See Schneck v. City of Philadelphia*, 34 Pa. Commw. 96, 383 A.2d 227 (Pa. Cmwlth. 1978).

[3] Even if the City were correct that Section 6120 requires an analysis of federal law, this does not raise a federal question that confers jurisdiction on this Court, for all the reasons stated in Plaintiffs' Motion to Remand which are not repeated here.  Application of federal law to have impact on state law – for the sole purpose of determining what the City can regulate pursuant to Section 6120 – does not require interpreting federal law, does not create any precedent about federal law, and in no way affects the operation of federal law, whether directly or indirectly.

### B. Just Because a Homemade Firearm *Might* be Manufactured in Violation of Some Federal Statute Does Not Mean that Statute "Govern[s]" Homemade Firearms.

After arguing that a Section 6120 case necessarily requires an examination of federal law to determine what is lawful, the City next points to the allegedly "many federal provisions" it claims are implicated by the Ordinance. Opp. at 3-5. But each of the statutes cited by the City demonstrate an utter lack of understanding of federal firearms laws.

First, the City notes that 18 U.S.C. Section 923(i) requires certain firearms "to have a serial number" (Opp. at 4) but, by its plain language, that section only applies to "[l]icensed importers and licensed manufacturers," not those making homemade guns for private use.[4]

Second, the City relies on 18 U.S.C. Section 922(s)(1), even though that section of the code is defunct, by its terms having only applied for the five-year period from November 30, 1993 to November 29, 1998. The City also relies on Section 922(t)(1), which requires "licensed firearms dealers" to "conduct[] a background check" prior to "selling, transferring, or delivering a firearm…." Opp. at 4. But again, this provision has no bearing on the Ordinance, *which exempts from its prohibitions those who are federally licensed* (and thus must already perform background checks), while prohibiting the manufacture of homemade firearms only by the unlicensed. *See* Phila. Code Section 10-2002(1)(a).

Third, the City invokes 26 U.S.C. Sections 5822 and 5841, which it claims broadly "prohibit[] the manufacture of 'firearm[s]' without advance registration with and approval from the Attorney General." Opp. at 4. The City is practicing law by headnote. Tellingly, Sections 5822 and 5841

---

[4] The City claims that the Ordinance at issue "prohibits the manufacture of these types of weapons by any person not authorized to do so under federal law." Opp. at 2. This statement conflates two ideas and misstates the law. No federal law prohibits a law-abiding person from making his own firearm, and so no one must be "authorized" to do so. Federal law only requires a person to obtain a federal firearms license ("FFL") in order to be "engaged in the business" of manufacturing firearms, but manufacturing by FFL holders is not what the Ordinance prohibits.

are part of the *National Firearms Act* of 1934, which deals with heavily-regulated Title II "firearms" such as machineguns, short-barreled firearms, silencers, *etc*. In order to privately manufacture one of *those* types of "firearms" (which are not at issue in this case), a person must obtain advance ATF approval, must pay a $200 tax, and must have the firearm registered in the National Firearm Registration and Transfer Record. By contrast, no such permission is required to privately manufacture a *Gun Control Act* Title I "firearm" (the traditional handguns and rifles, which are at issue in this case).[5] The City demands that this Court take up this case to determine the contours of federal firearms law, yet the City does not understand how those laws operate.

Finally, the City directs the Court to 18 U.S.C. Section 922(p)(1)(a), the Undetectable Firearms Act, which declares unlawful firearms that do not contain at least 3.7 oz of steel, or which do not provide accurate images when scanned by x-ray machines. Opp. at 3. But that statute does not regulate *homemade firearms* in particular; rather, it creates certain general requirements that apply to *all firearms*. The fact that a homemade firearm might be made in violation of this section is irrelevant, because *any* firearm could violate this section. Indeed, a homemade firearm likewise could be manufactured in violation of any number of other federal statutes.[6] It is highly misleading to argue that those other statutes "govern[] … the manufacture of 3D-printed or unregistered guns." Opp. at 3. More fundamentally, however, just because it is theoretically possible to privately manufacture a firearm in violation of any of a number of federal and state firearms laws does not mean that the private manufacture of firearms is anything other than "lawful."

---

[5] The City's Ordinance looks at 18 Pa.C.S. Section 5155(a), which defines firearm in the traditional Gun Control Act sense, as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon." *Cf*. 18 U.S.C. Section 921(a)(3).

[6] For example, a person may not privately manufacture an illegal post-1986 machinegun (18 U.S.C. Section 922(o)), an unregistered short-barreled rifle or shotgun (as defined in 26 U.S.C. Section 5845(a)), or a "destructive device" which shoots bullets greater than 50 caliber. *See* Section 5845(f). Likewise, a prohibited person may not make a homemade firearm if he is barred from possessing one under 18 U.S.C. Section 922(g)(1)-(9).

5

### C. This Court Does Not Obtain Jurisdiction Because the Meaning of a *State* Statute Is "Actually Disputed."

After citing these various federal statutes, none of which bear on the prohibitions contained in the Ordinance, the City claims that "***application*** of these provisions is 'actually disputed.'" Opp. at 4 (emphasis added). The City's argument misses the mark.[7] Any dispute between the parties is *not about the meaning* of the federal "provisions," (the "federal question" necessary to obtain federal jurisdiction) but rather about the "application" of these federal statutes to state law. In fact, the core of the "dispute" here is about the scope of the prohibition in Section 6120 – its requirement that preempted activities otherwise be "lawful" under state law. As a result, even if the Court chose to examine federal law to see how it "appli[es]" to Section 6120, there is still no "federal question" to be answered, and the Court's answer would have absolutely no bearing on the interpretation of federal law, nor would it affect future application of federal law in any way.

Finally, the City faults Plaintiffs for reliance on ATF statements that it is perfectly lawful to privately manufacture a firearm for personal use. Opp. at 4. The City objects that neither Plaintiffs nor ATF have offered supporting statutes "which *authorize* the conduct regulated by the ordinance," and that "Plaintiffs have not plead [sic] *compliance with* the other[]" irrelevant statutes above. *Id*. at 5 n.5 (emphasis added). Apparently, the City believes that everything is illegal unless a federal law expressly makes it lawful. That is not how laws work. Finally, the City claims ATF could change its website at any time. Opp. at 5. Of course, that would not change the underlying law, which does not prohibit the making of homemade firearms.

---

[7] It is worth noting that it was in its Opposition Brief that the City has explained for the first time its claim or even mentioned these federal statutes, or asserted they have some bearing on this case. *See* 28 U.S.C. Section 1446(a), requiring a notice of removal to "contain[] a short and plain statement of the grounds for removal."

### D. A Question Is Not "Substantial" Under Federal Law Merely Because It Is Important to State Law.[8]

The City next claims that determination of the scope of Section 6120's preemption is "a 'substantial' federal question," asserting the matter has "importance … to the federal system as a whole" and "would govern numerous other cases." Opp. at 6 (citing cases). But as noted above, *even if* the Court were necessary to look at federal law here (on the contrary, as Plaintiffs noted, a Pennsylvania court likely would resolve this case without mentioning federal law at all), this Court's decision would have literally no impact on "the federal system as a whole" because its decision would only determine the scope of the preemption contained in state. Moreover, any decision would "govern" no other federal cases, since it would only apply to the scope of Section 6120. Certainly, were this Court to analyze federal law to determine the contours of Section 6120 (something expressly foreclosed by *Minich*), that might have a "substantial" effect on *Pennsylvania* law, but that does not raise a "substantial" *federal* question.[9]

---

[8] The City obviously understands that a complaint resting solely on principles of state law is generally not removable. It made that argument in *City of Phila. v. Pennsylvania*, 2004 U.S. Dist. LEXIS 25151 (E.D. Pa. Dec. 13, 2004) with regard to "state law cost allocation," and the court granted the City's motion to remand in that case for lack of federal question jurisdiction.

[9] For reasons that are unclear, the City claims generally that "3D-printed guns and 80% receivers are a nationwide issue" (Opp. at 7), but that is not the same thing as presenting a substantial federal question. Likewise, the City points to a pending ATF Notice of *Proposed* Rulemaking on the subject of what constitutes a firearm "frame or receiver" (86 Fed. Reg. 27732), but as its title implies, this rulemaking is being "proposed" and is not yet final or guaranteed. Removal cannot be based on what a federal agency *might* do in the future. Moreover, *even if* the Rulemaking were later finalized as a regulation, it would in no way affect much less alter the outcome of this case, because the Proposed Rule *still* would not purport to prohibit conduct that the Ordinance prohibits – the private manufacture of firearms for personal use. Only Congress can enact such a prohibition. (Plaintiffs Gun Owners of America, Inc. and Gun Owners Foundation recently submitted extensive comments opposing the ATF's Proposed Rulemaking.) Finally, the City obtusely claims that "federal courts have great familiarity with federal firearms statutes … while being free of the pressures of politics that often accompany gun control issues," as if this Court somehow obtains jurisdiction on the basis of the City's lack of trust in state courts to handle the matter appropriately.

7

### E. Reliance on Second Amendment Cases to Help Interpret Article I, Section 21 Does Not Create a Federal Question.

In its Notice of Removal, the City also claimed without support that "Plaintiffs' Complaint [] requires the Court to determine the boundaries of the United States Constitution."  Notice of Removal at 2.  Plaintiffs had rebutted this notion in their Motion to Remand, citing a recent Virginia case which expressly forecloses the argument the City raises here.  The City now concedes that Plaintiffs "have not literally brought suit under the Second Amendment."  Opp. at 8 n.10.  Even still, the City argues, "Pennsylvania's Constitution must necessarily be interpreted … *in light of* the Second Amendment."  *Id.* (emphasis added).  That is not the test for what constitutes a removable federal question.  Even if a court looked at federal authorities as persuasive when interpreting the similar Pennsylvania constitutional provision, the court *would still be interpreting the Pennsylvania Constitution*, *not the Second Amendment*, and such interpretation would have absolutely no impact on federal law.  Indeed, this was precisely the holding reached just last year by Judge Moon in the Eastern District of Virginia – a directly on point decision raised by Plaintiffs in their motion, but which the City neither references nor attempts to rebut.  And the City (quite obviously) is unable to offer any contrary source of authority for its assertion, further evidencing its entirely frivolous nature.

Perhaps recognizing the baseless nature of its claim, the City now appears largely to have abandoned this argument, relegating it to a mere footnote in its brief.  Opp. at 8 n.10.  In fact, the City then goes even further than that, partially retreating and offering up Counts II and III of Plaintiffs' Complaint as a sacrificial lamb, suggesting that the "Court could theoretically sever and remand Counts II … and III," but then still arguing that the Court should "exercis[es] supplemental jurisdiction over these claims."  *Id.* at 10 n.11.  Rarely does the same party that removed a case thereafter suggest that remand in fact may be appropriate.

8

### F. An Award of Fees and Costs Is Entirely Appropriate and, indeed, Necessary Here.

The City claims that it had an "objectively reasonable basis" for removing Plaintiffs' case from state court. Opp. at 10. Of course, as noted above, the City has all but admitted that one of its claims for removal was baseless. *Id*. at 8 n.10, at 10 n.11. Yet with respect to its remaining claim, the City provides only one reason why removal was appropriate, citing to "the existence of" *PharmaCann Penn, LLC v. BV Development Superstition RR, LLC*, 297 F. Supp. 3d 537 (E.D. Pa. 2018). *Id.* Indeed, the City's entire opposition is centered around this decision. *Id.* at 2, 5, 6, 8, 9, 10. Perhaps the City should not have placed all of its eggs into the *PharmaCann* basket, because that decision provides not a shred of support for the City's removal here. In *PharmaCann*, "[t]he deed to a property … prohibit[ed] using the property … for any 'unlawful' use." *Id*. at 539. When a "medical marijuana dispensary" was opened at the property, and given the blessing of the state and city, the shopping center brought suit. In determining that removal was appropriate, Judge Pratter explained the "single term … 'unlawful' … opens the door for federal question jurisdiction by teeing up a fundamental clash between state and federal law in this case." *Id*. at 540.

But in *PharmaCann* the term "unlawful" was not qualified in any way, and thus open to its natural dictionary definition, which included legality under both federal and state law. But in this case, the plain language of Section 6120 expressly limits the term "lawful" to an examination of state law – "prohibited by the laws of this Commonwealth." Not only that, but the Commonwealth Court's decision in *Minich*, which binds this Court and the City as to the meaning of Section 6120, explained that the "lawful[ness]" inquiry revolves around state law.

There is another reason that *PharmaCann* has no application here. In that case, whereas Pennsylvania had legalized medical marijuana, the drug "'remain[ed] illegal under federal law,'" an inquiry which was "necessary to decide whether the dispensary is an 'unlawful' use under the

9

deed" and, in turn, necessary "in order for PharmaCann to get the relief it seeks." *Id*. at 541. Yet in spite of the City's attempts to fit a square peg into a round hole, federal law unquestionably does not regulate non-firearms (items that are regulated by the Ordinance), and unquestionably does not prohibit a law-abiding person from making his own firearm (activities that are banned by the Ordinance). Unlike the deed in *PharmaCann*, there is no need whatsoever for a court to examine federal law in order to determine that the City's Ordinance violates the Pennsylvania state preemption statute.[10]

## CONCLUSION

Perhaps frustrated by the repeated losses it has suffered in Pennsylvania state courts,[11] the City now has attempted this, its most recent desperate tactic, improperly removing this case to federal court, apparently in the hopes of obtaining a different result. Of course, due to the simplicity and strength of the Pennsylvania firearms preemption statute, it is highly likely that *any court* would find the City's Ordinance (yet again) to be in violation. Either way, Plaintiffs are clearly and obviously entitled to have this case remanded to state court where it belongs, and to be paid their fees and costs for having to fight the City's frivolous removal.

---

[10] And, of course, the Court in *PharmaCann* found that the other three elements for removal had been met (*id.* at 541-543), whereas here, none of them have been met.

[11] *Schneck* and *Ortiz* may represent Philadelphia's initial failed attempts to regulate firearms in violation of Section 6120, but they were far from the last. *See Clarke v. House of Representatives*, 957 A.2d 361, 365 (2008); *NRA v. City of Philadelphia*, 977 A.2d 78 (2009) (reversed in part on other grounds). The history is clear. Numerous times the City has attempted to enact gun control regulations in clear and obvious violation of the Pennsylvania preemption statute, and each time the City has been bench-slapped by state courts. Last year, the City even went so far as to sue the Pennsylvania General Assembly for having enacted the preemption statute in the first place, in a desperate attempt to undo the provisions of Section 6120. *Crawford v. Commonwealth* (No. 562 MD 2020) (pending in Commonwealth Court).

Dated: July 7, 2021.                    Respectfully submitted,

/s/ James N. Clymer
James N. Clymer, Esq.
Pennsylvania Bar # 27151
Clymer Musser & Sarno, P.C.
408 West Chestnut Street
Lancaster, PA 17603
+1 (717) 299-7101
jim@clymerlaw.com

## **CERTIFICATE OF SERVICE**

I, James N. Clymer, counsel for Plaintiffs, hereby certify that on this day, I have caused to be filed the foregoing document or pleading with the District Court's ECF which sent a notice and a copy of the foregoing to all counsel of record.

Dated:  July 7, 2021

/s/ James N. Clymer
James N. Clymer, Esq.
Pennsylvania Bar # 27151
Clymer Musser & Sarno, P.C.
408 West Chestnut Street
Lancaster, PA 17603
+1 (717) 299-7101
jim@clymerlaw.com

11