**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **GUN OWNERS OF AMERICA, INC.,** | : | **CIVIL ACTION** |
| **GUN OWNERS FOUNDATION, DAVID** | : | |
| **COTUGNO, ROSS GILSON, VERN** | : | |
| **LEI and MICHAEL STROLLO** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **CITY OF PHILADELPHIA** | : | **NO. 21-2630** |

<u>**MEMORANDUM**</u>

**Savage, J.**                                                          **October 7, 2021**

Moving for remand of this action challenging the validity and constitutionality of a Philadelphia ordinance regulating the manufacture of certain types of firearms,[1] the plaintiffs argue that removal was improper because none of their claims arise under federal law.  Defendant, the City of Philadelphia, contends that there is federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441 and 1446 because resolution of the plaintiffs' claims requires an analysis of federal firearms law and the Second Amendment to the United States Constitution.

We conclude that there is no federal question presented in the complaint nor any other basis for exercising federal jurisdiction.  Therefore, we shall grant the motion and remand the action.

---

[1] *See* Phila. Code §§ 10-2000 - 10-2005.

**Background**

Gunowners of America, Inc. ("GOA"),[2] Gun Owners Foundation ("GOF"),[3] and four GOA members challenge the validity and constitutionality under Pennsylvania law of a Philadelphia ordinance regulating the manufacture of certain unregistered and untraceable firearms (the "Ordinance").[4]  The Ordinance prohibits the manufacture of 3D-printed guns, use of a three-dimensional printer and plastic parts that can bypass security systems, and the manufacture of ghost guns made from parts without serial numbers or other identification.  *See* Phila. Code § 10-2002(1)(a)-(c).[5]  It also prohibits the purchase, sale or transfer of unfinished versions of these weapons, such as an unfinished frame or receiver,[6] and tools purposed for converting unfinished firearms into finished ones, such as "firearm finishing devices."[7]  *See id.* § 10-2002(2)-(3).  The Ordinance applies to all persons in Philadelphia except those "licensed to manufacture firearms under federal law."  *See id.* § 10-2002(1)-(3).  A single violation of the Ordinance is a Class III offense

---

[2] GOA is a not-for-profit corporation whose mission is to protect and defend the Second Amendment and state constitutional rights of gun owners.  Compl. (Doc. No. 1-1) ¶ 3.

[3] GOF is a nonprofit legal defense and educational foundation that defends its supporters' rights to keep and bear arms.  Compl. ¶ 4.

[4] *See* Phila. Code , Title 10, Chapter 10-2000, *Unlawful Manufacture of Firearms*, §§ 10-2001 - 2005 (enacted Jan. 27, 2021).

[5] The Ordinance amends the 2013 version of Chapter 10-2000, which only prohibited the use of a 3D printer to manufacture a firearm.  *See* Phila. Code, Title 10, Chapter 10-2000, *Use of Three-Dimensional Printer to Manufacture Firearms*, §§ 10-2001 - 2003 (enacted Dec. 4, 2013).

[6] Unfinished frames or receivers are sometimes called 80% frames or receivers, and 80% frame or receiver kits.  A receiver is sometimes referred to as a lower.  *See* Compl. ¶¶ 5-7, 29; City's Opp'n to Mot. to Remand (Doc. No. 6) ("City's Opp'n") at 1.

[7] The Ordinance defines a firearm finishing device as "[a]ny device, such as a firearm finishing mill or jig, which has as its primary purpose to aid the conversion of an unfinished frame or receiver into a finished frame or receiver."  *See* Phila. Code § 10-2001(8).

punishable by a $2,000.00 fine, and multiple violations are punishable up to ninety days in prison. *See id.* §§ 10-2003, 10-2004; Compl. ¶¶ 18-19.

The individual plaintiffs, David Cotugno, Ross Gilson, Vern Lei and Michael Strollo, assert that they are eligible under federal and state law to purchase and possess firearms, and to privately manufacture firearms for their own use. They allege the Ordinance prohibits them from manufacturing their own firearms using 80% frame and lower kits and from using firearm manufacturing tools they own or intend to purchase to make their own firearms.[8]  Additionally, Lei alleges that he cannot purchase a 3D printer to make a firearm without violating § 10-1002(1)(a).[9]

In Count I of the complaint, the plaintiffs claim that the Ordinance is preempted by the Pennsylvania Uniform Firearms Act, 18 Pa.C.S. § 6120 ("PUFA"). The PUFA states, in relevant part, that

> No county, municipality or township may in any manner regulate the lawful ownership, possession, transfer or transportation of firearms, ammunition or ammunition components when carried or transported for purposes not prohibited by the laws of this Commonwealth.

18 Pa.C.S. § 6120(a).

The plaintiffs allege that the Ordinance prohibits persons in Philadelphia from privately manufacturing firearms for their own use from an unfinished 80% frame or receiver, or using a 3-D printer, even though no Pennsylvania or federal law prevents a

---

[8] Specifically, Cotugno owns tools intended for the private manufacture of firearms and would like to manufacture his own firearm receiver from an 80% frame kit.  Gilson and Strollo own unfinished firearm frames or receivers, including 80% lower kits, which they want to complete into functional firearms.  Lei intends to manufacture firearms from 80% lower kits using "firearm finishing devices" he owned before the Ordinance was enacted. *See* Compl. ¶¶ 5-8.

[9] *See id.* ¶ 7.

law-abiding citizen from engaging in these activities.  They contend that the Ordinance thus regulates the "ownership" and "possession" of firearms by its residents.  They argue that because the PUFA expressly prohibits municipalities from regulating the "lawful ownership [and] possession" of firearms, the Ordinance is preempted by the PUFA.[10]

Count II asserts that the Ordinance is unconstitutional under Article I, Section 21 of the Pennsylvania Constitution.  That provision states that "[t]he right of the citizens to bear arms in defense of themselves and the State shall not be questioned."  Pa. Const. art. I, § 21.  The complaint alleges that the Ordinance violates this constitutional provision in two ways.  First, the Ordinance violates the constitutional right to bear an arm because in order to "bear" an arm, it must first be manufactured or acquired, and the Ordinance severely limits the plaintiffs' rights to acquire the tools necessary to make a firearm. Second, because the Ordinance prohibits a person from making a firearm to use for lawful purposes, including self-defense, it violates the right to bear arms in self-defense.[11]

In Count III, the plaintiffs assert that the Ordinance is void for vagueness in violation of the due process clause of Article 1, Section 9 of the Pennsylvania Constitution.[12]  They allege that the Ordinance is a penal statute because a single violation of the Ordinance is a Class III offense punishable by a $2,000.00 fine, and multiple violations are punishable up to ninety days in prison.  *See* Phila. Code §§ 10-2003, 10-2004; Compl. ¶¶ 18-19, 50.  They contend that several terms and criminal offenses in the Ordinance are

---

[10] *See id.* ¶¶ 23-24, 34-36.

[11] *See id.* ¶¶ 25-27, 48-49.

[12] The "due process clause" of the Pennsylvania Constitution provides, in relevant part: "[N]or can [the accused] be deprived of his life, liberty or property, unless by the judgment of his peers or the law of the land."  Pa. Const. art. I, § 9.

so vaguely defined that ordinary people cannot understand what conduct it prohibits, making it void for vagueness.[13]

The complaint cites cases brought under the Second Amendment to draw an analogy to the claim in Count II alleging a violation of the right to bear arms under the state constitution.[14]  It makes two references to the federal Bureau of Alcohol, Tobacco, Firearms, and Explosives ("ATF") answers to Frequently Asked Questions ("FAQ") on its website to show that there is no federal prohibition on the manufacture of a firearm for personal use, and that an unfinished receiver is not a firearm nor subject to regulation under the federal Gun Control Act.[15]  Acknowledging these references to federal sources, the complaint expressly states that it "seeks relief solely on state law grounds."[16]

They seek to preliminarily and permanently enjoin the City from enforcing the Ordinance.  They request a declaratory judgment that the Ordinance violates and is preempted by the PUFA, violates Article 1 § 21 of the Pennsylvania Constitution, and violates the due process clause of Article 1, Section 9 of the Pennsylvania Constitution.

In removing this action, the City contends there is federal question jurisdiction under 28 U.S.C. § 1331 because resolution of two of the plaintiffs' claims require the court to analyze federal law.  Specifically, the City argues that to prevail on their claim that the Ordinance is preempted by the PUFA, the plaintiffs will have to show that the activities

---

[13] *See* Compl. ¶¶ 50-55.

[14] *See id.* ¶ 48 & n.9.

[15] *See id.* ¶¶ 28, 30-31.

[16] *See id.* ¶ 48 n.9.

regulated by the ordinance are "lawful" under federal law.[17]  With respect to Count II asserting that the Ordinance violates Article I, Section 21 of the Pennsylvania Constitution, the City asserts that we must interpret the "boundaries" of the Second Amendment in order to determine whether the Ordinance violates a similarly-worded provision in the state constitution.[18]

In their motion to remand, the plaintiffs reiterate that they assert no claim under the Second Amendment or any federal law.  They assert that references to federal law in the complaint merely provide context to their state statutory and constitutional claims, and do not raise federal questions requiring resolution by the federal court.

## Federal Question Jurisdiction

A defendant removing a case from state court under § 1331 bears the burden of demonstrating federal jurisdiction.  *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 218 (3d Cir. 2015) (citing *Samuel–Bassett v. KIA Motors Am., Inc.*, 357 F.3d 392, 396 (3d Cir. 2004)).   Additionally, removal statutes are strictly construed against removal, and all doubts are resolved in favor of remand.  *A.S. ex rel. Miller v. SmithKline Beecham Corp.*, 769 F.3d 204, 208 (3d Cir. 2014) (citation omitted); *Brown v. JEVIC*, 575 F.3d 322, 326 (3d Cir. 2009).

A defendant may remove a civil action from state court where there is a federal question.  *Smith v. Indus. Valley Title Ins. Co.*, 957 F.2d 90, 92 (3d Cir. 1992) (citing *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987)); 28 U.S.C. §§ 1331 and 1441.  To

---

[17] *See* Not. of Removal (Doc. No. 1) ¶ 2 (citing Compl. ¶¶ 28, 30-31); City's Opp'n at 3-4. Specifically, in its removal notice it argues that resolution of this claim necessitates analysis of the federal Gun Control Act of 1968, 18 U.S.C. § 921, *et seq.* and the definition of a firearm under 18 U.S.C. § 921(a)(3). Not. of Removal ¶ 2.  In its response to the motion to remand, the City cites six other federal provisions regulating the manufacture and sale of many types of firearms.  City's Opp'n at 3-4.

[18] *See* Not. of Removal ¶ 2; City's Opp'n at 2, 8 n.10.

confer federal question jurisdiction, the claim must arise "under the Constitution, laws, or treaties of the United States."   28 U.S.C. § 1331; *Empire Healthchoice Assur., Inc. v. McVeigh*, 547 U.S. 677, 689–90 (2006).

Typically, a claim "arises under federal law when federal law creates the cause of action asserted."  *Gunn v. Minton*, 568 U.S. 251, 257 (2013) (citation omitted).  In a "small category of cases," however, federal question jurisdiction over a state-law claim may exist if the complaint implicates a federal issue that satisfies the four-pronged test set forth in *Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005).  *See Goldman v. Citigroup Glob. Markets Inc.*, 834 F.3d 242, 249 (3d Cir. 2016) (quoting *Gunn*, 568 U.S. at 258).  For jurisdiction to lie under *Grable*, the federal issue must be: "(1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress."  *Gunn*, 568 U.S. at 258 (summarizing the *Grable* test).  Thus, to establish federal-question jurisdiction under the *Grable* test, the complaint must show that the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Goldman*, 834 F.3d at 249 (quoting *Franchise Tax Bd. of State of Cal. v. Constr. Laborers Vacation Trust for S. Cal.*, 463 U.S. 1, 27-28 (1983)).

## Discussion

A federal issue is not necessarily raised here.   Resolving the state law issues raised in the complaint does not require application or interpretation of federal law.

For a federal issue to be necessarily raised, "vindication of a right under state law [must] necessarily turn[ ] on some construction of federal law."  *Manning v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 772 F.3d 158, 163 (3d Cir. 2014) (quoting *Franchise Tax*

*Bd.*, 463 U.S. at 9), *aff'd*, 136 S. Ct. 1562 (2016).  Additionally, the federal issue must be significant to the parties.  *Gunn*, 568 U.S. at 260.  The key is what the term "necessarily" means.

When a case is removed from the state court on the basis of "arising under" federal question jurisdiction, the well-pleaded complaint rule applies.  The grounds for federal question jurisdiction must appear on the face of the plaintiff's complaint.  *Caterpillar*, 482 U.S. at 392; *Goldman*, 834 F.3d at 249 (citing *Franchise Tax Bd.*, 463 U.S. at 9-11).  A plaintiff may avoid removal by explicitly choosing to present solely state law claims and forego any federal claims.  *Caterpillar*, 482 U.S. at 392.  A possible or anticipated federal defense is not a basis for removal.  *Franchise Tax Bd.*, 463 U.S. at 10.  Thus, to establish federal-question jurisdiction when only state law claims have been pled, the complaint must show that the "plaintiff's right to relief necessarily depends on resolution of a substantial question of federal law."  *Goldman*, 834 F.3d at 249 (quoting *Franchise Tax Bd.*, 463 U.S. at 27-28).

There is no federal issue necessarily raised.  Plaintiffs challenge the constitutionality of the Ordinance under the Pennsylvania Constitution, Article I, Section 21, and raise the applicability of preemption under a Pennsylvania statute, 18 Pa.C.S. § 6120.  They expressly deny making a federal claim under the United States Constitution or federal statutes.

*Plaintiffs' State Constitutional Claim of the Right to Bear Arms*

Count II alleges a violation of the right to bear arms under Article I, Section 21 of the Pennsylvania Constitution.[19]   The complaint makes one reference to the Second

---

[19] *See* Compl. ¶ 48 & n.9.

Amendment when it cites cases brought under that provision. The plaintiffs state that they cite authorities under the Second Amendment because the federal and state provisions are similar. Because the rights of Pennsylvanians under its state constitution must be at least as broad as they are under the Second Amendment, they contend that holdings of federal circuit courts may serve as persuasive authority in resolving analogous cases.

The City contends that because the federal and state constitutional provisions are similar, the plaintiffs' constitutional claim must necessarily be interpreted in light of the Second Amendment. It argues that we must interpret the "boundaries" of the Second Amendment in order to determine whether the Ordinance violates the state constitutional provision.[20]

We do not agree. The plaintiffs assert no claim under the Second Amendment. Any references in the complaint to federal law construing the Second Amendment merely provide context to the claim brought under the similarly-worded state constitutional provision.

The plaintiffs' state constitutional claim does not necessarily raise a federal question. The plaintiffs' right to relief does not depend on the application or interpretation of the Second Amendment.

*Plaintiffs' Preemption Claim*

The City argues that resolution of the plaintiffs' preemption claim necessitates analysis of the federal Gun Control Act of 1968, 18 U.S.C. § 921, *et seq.* and its definition

---

[20] *See* Not. of Removal ¶ 2; City's Opp'n at 2, 8 n.10.

of a firearm under 18 U.S.C. § 921(a)(3).[21]   Additionally, pointing to language in the Pennsylvania Uniform Firearms Act prohibiting municipalities from regulating the "lawful" ownership, possession and transfer of "firearms," it contends that in order to prevail on their preemption claim, the plaintiffs will have to show that the activities regulated by the Ordinance are "lawful" under federal firearms law.[22]   The City complains that the plaintiffs have not pled compliance with these federal statutes, and they may not rely on ATF's answers to FAQ's.   It appears to argue that in order to prevail on their preemption claim, the plaintiffs must identify federal statutes that "authorize the conduct regulated by the ordinance."[23]   In other words, the City is arguing that all actions are illegal unless a federal law expressly makes them lawful.   It contends that the plaintiffs have conceded they must show that the activities regulated by the Ordinance are lawful under federal law in order to prevail on their preemption claim.   It points to the complaint, which alleges that "[n]o Pennsylvania or federal law prevents a law-abiding citizen from" manufacturing a firearm for private use by completing an unfinished frame or receiver or using a 3-D printer.[24]

Specifically, it argues that resolution of this claim necessitates analysis of several federal statutes regulating "projectile weapons."   These include 18 U.S.C. § 922(p)(1)(A), prohibiting the manufacture, possession, sale or transfer of firearms that cannot be detected by walk-through metal detectors; 18 U.S.C. § 923(i), requiring a serial number to be placed on all receivers or frames of firearms sold; 18 U.S.C. § 922(s)(1)-(t)(1),

---

[21] *See* Not. of Removal ¶ 2.

[22] *See* City's Opp'n at 3, 6.

[23] *See id.* at 5 n.5.

[24] *See id.* at 3 (citing Compl. ¶¶ 23, 28-29).

prohibiting the sale or transfer of a firearm from a dealer to an individual without first conducting a background check; and 26 U.S.C. §§ 5822 and 5841, prohibiting the manufacture of a firearm without advance approval from the United States Attorney General.

The City argues that in order to determine whether the activities regulated by the Ordinance are lawful under federal law, the court will have to analyze whether the objects addressed by the Ordinance are "firearms" within the meaning of these federal statutes. If the court so determines, it posits, then the federal statutory prohibitions apply to the activities regulated by the Ordinance. So, it argues, an issue of federal law is necessarily raised by the plaintiffs' preemption claim.[25]

The plaintiffs contend that no federal question is implicated merely because they state in the complaint that no Pennsylvania or federal law prohibits the activities regulated by the Ordinance.  Rather, the statements provide context to their purely state statutory law claim.  They insist that their statements about the contours of federal law have no bearing on resolution of their claim.[26]

The plaintiffs assert that the City selectively quotes from the PUFA to create the illusion that federal law is relevant to the plaintiffs' preemption claim.  They note that the PUFA prohibits a municipality from regulating the "ownership, possession, transfer or transportation of firearms" as long as the firearms are being used "for purposes not prohibited by" Pennsylvania law.  In other words, to have a preemptive effect, the PUFA

---

[25] *See id.* at 3-4.

[26] *See* Pls.' Br. at 7-8, 11.

does not require the possession or transfer of a firearm to be lawful under both state and federal law. It need only be lawful under state law.[27]

Even if the PUFA contemplated a consideration of relevant federal law, the plaintiffs contend that the none of the federal firearms law provisions cited by the City implicate the Ordinance or resolution of their preemption claim. They argue that no federal law cited applies to the activities regulated by the Ordinance or to the individual plaintiffs.[28]

We agree with the plaintiffs that resolution of the preemption claim does not necessitate analysis of federal firearms law. The "vindication of [their] right" under the state preemption law does not "necessarily turn[ ] on some construction of federal law." Contrary to the City's contention, resolving the plaintiffs' challenge does not require analysis of the Gun Control Act of 1968 or the definition of a firearm under 18 U.S.C. § 921(a)(3). The Pennsylvania Uniform Firearms Act adopts the definition of a firearm from another Pennsylvania statute, 18 Pa.C.S. § 5155(a). *See* 18 Pa.C.S. § 6120(b) (adopting

---

[27] *See* Pls.' Reply (Doc. No. 7) at 2. *See also id.* at 2-3 (citing *Minich v. County of Jefferson*, 869 A.2d 1141, 1143 (Pa. Commw. Ct. 2005) (holding that a city may regulate with respect "only to the *unlawful* possession of firearms, i.e., possession 'prohibited by the laws of this Commonwealth.'").

[28] Specifically, regarding 26 U.S.C. §§ 5822 and 5841, which require manufacturers and dealers of firearms to obtain advance approval from the ATF and registration of firearms, the plaintiffs note that those statutes govern the manufacture and sale of machine guns, silencers and short-barreled shotguns and rifles, not handguns and standard rifles, which are at issue here. *See* 26 U.S.C. § 5845(a)-(d). Additionally, these provisions apply only to those who are in the "business" of manufacturing firearms, not those making guns for personal use. *See* 26 U.S.C. § 5845(k)-(m). The plaintiffs contend that 18 U.S.C. § 923(i), which requires a serial number to be placed on the receiver or frame of a firearm prior to its sale, applies only to "[l]icensed importers and licensed manufacturers" "engaged in the business of" manufacturing and selling firearms, not to those making homemade guns for private use. Similarly, they argue that 18 U.S.C. § 922(t)(1), which prohibits the sale or transfer of a firearm from a *federally licensed* manufacturer or dealer to an *unlicensed* individual without first conducting a background check, does not apply to activities regulated by the Ordinance, as that expressly exempts from its prohibitions those who are federally licensed, and only prohibits the manufacture of homemade firearms by the unlicensed. *See* Phila. Code § 10-2002(1)(a). They also note that 18 U.S.C. § 922(s)(1), another provision cited by the City as prohibiting the sale or transfer of a handgun from a licensed manufacturer or dealer to an unlicensed individual without first conducting a background check, expired in 1998. *See* Pls.' Reply at 4-5.

section 5515's definition of "firearm" as "any weapon which is designed to or may readily be converted to expel any projectile by the action of an explosive; or the frame or receiver of any such weapon.").  There is no need to compare the federal definition to the state's.

Nor will the plaintiffs be required to show that the activities regulated by the Ordinance are "lawful" under federal firearms law in order to prevail on their preemption claim.  The challenge is to the validity of the Ordinance under Pennsylvania law, not under federal law.  A ruling that the activities regulated by the Ordinance violate or do not violate federal law does not affect application of Pennsylvania law.  In other words, that the activities regulated by the Ordinance may or may not violate federal law does not mean they necessarily violate or do not violate Pennsylvania law.  That issue is not raised here. In fact, the PUFA makes no mention of a need to look to federal law to have a preemptive effect.  It only requires that the possession or transfer of a firearm be lawful under state law.  Nor does the complaint raise a federal question by stating that the activities regulated by the Ordinance do not violate federal or state law.  Rather, the statements provide context to the state preemption claim.

As with the state constitutional claim, the plaintiffs' preemption claim does not present or implicate a federal issue.  No application or interpretation of federal firearms law is required to determine the state law preemption claim.

### Conclusion

The plaintiffs raise claims only under the Pennsylvania Constitution and state law. The absence of a federal issue necessarily requiring resolution in this case raising only state statutory and constitutional claims precludes "arising under" federal jurisdiction under the *Grable* test.  Thus, the City has not met its burden of demonstrating that there

is a federal question or other basis for exercising jurisdiction.  Therefore, we shall grant the plaintiffs' motion and remand this action to the state court.